**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
T: (480) 464-1111 F: (480) 464-5692
Attorneys for Plaintiffs
Email: centraldocket@jacksonwhitelaw.com
By:    Michael R. Pruitt, No. 011792
       mpruitt@jacksonwhitelaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Gary Branson, filing individually and on behalf of all others similarly situated; Steven Pena, filing individually and on behalf of all others similarly situated; and Paul Acevedo, filing individually and on behalf of all others similarly situated;<br><br>        Plaintiffs,<br><br>v.<br><br>Classy Closets, Etc., Inc. an Arizona Corporation; and Duane Standage and Jill Standage, husband and wife,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiffs, Gary Branson, Steven Pena and Paul Acevedo, each filing as an individual and on behalf of all others similarly situated, by and through their counsel undersigned, and for their Complaint allege as follows:

   1.   This action arises from the illegal employment actions of Defendant Classy Closets, Etc., Inc. (Classy Closets), Defendant Duane Standage and Defendant Jill Standage involving violations of the overtime wage provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

2. The FLSA requires employers pay all covered employees an overtime wage of at least 1 ½ times their normal hourly compensation rate for all hours worked in excess of 40 hours in any workweek unless the employee rightfully qualifies for one of the exemptions to the payment of overtime wages outlined in the FLSA.

3. As provided for under the FLSA, Plaintiffs bring this action on behalf of themselves as individuals and as a collective action on behalf of all other similarly situated current and former Classy Closet employees.

4. For purposes of this collective action, the relevant time period extends from the present back to the date three years prior to the filing of this collective action.

5. The group of those similarly situated, designated herein as the Collective Action Group, consists of all current and former employees of Classy Closets working as or holding the positions of Installer Level 1, Installer One, Lead Installer 1, Installer Level 2, Installer Two, Lead Installer 2, Installer Level 3, Installer Three, Lead Installer 3, Installer Level 4, Installer Four and Lead Installer 4 at any time during the relevant time period.

6. Plaintiffs and the Collective Action Group members were compensated through a common system of payment consisting of a designated daily salary amount plus commission calculated as a percentage of the dollar value of the installation project being worked on. The daily salary amount and commission percentage were based on the employee's assigned job title.

7. On information and belief, at various times during the relevant period, Plaintiffs and the Collective Action Group members may have been designated or referred to an Installer, Lead Installer, Installation Team Leader, or Installation Team Lead.

8. The Collective Action Group may also include, if appropriate, current or former employees of Classy Closets working as a Helper, Apprentice or other installation crew members provided the employee was classified as exempt at some point during the relevant time period and compensated through a combination of a daily salary plus

commission calculated as a percentage of the dollar value of the installation project being performed.

9. Plaintiffs reserve the right to clarify, update and amend the group of employees designated as being included in the Collective Action Group should additional groups of installation employees be found during the course of discovery that were classified by Defendants as exempt and compensated through a combination of a daily salary amount and commission based on the value of the installation project being worked on.

10. Plaintiffs and the Collective Action Group members were not paid based on the number of hours worked.

11. As a collective action, Plaintiffs will seek leave of the Court to provide notice to all other similarly situated Collective Action Group members of the opportunity to join this action and assert a claim for overtime wages by filing their written consent with the Court.

12. Plaintiffs and the Collective Action Group members met all legal and statutory requirements to be classified as employees as that term is defined under the FLSA.

13. As employees under the FLSA, Plaintiffs and the Collective Action Group members were covered by the provisions and protections of the FLSA such as receiving overtime wages.

14. During the relevant time period, Defendants met all legal and statutory requirements to be classified as employers of Plaintiffs and the Collective Action Group members as that term is defined under the FLSA.

15. As a covered employer, Defendants were required to comply with the provisions and legal requirements contained in the FLSA.

16. Plaintiffs and the Collective Action Group members routinely worked well over 40 hours in a typical workweek without receiving overtime wages.

17. Plaintiffs and the Collective Action Group members were improperly classified by Defendants as exempt employees and not paid the overtime wages rightly due them in violation of the FLSA.

18. Plaintiffs and the Collective Action Group members did not rightly qualify for any of the exemptions to the payment of overtime wages outlined in the FLSA.

19. This violation of the FLSA by Defendants was willful and taken in bad faith.

20. Plaintiffs and the Collective Action Group members were also required by Defendants to periodically work off-the-clock without compensation and perform labor for the benefit of Defendants.

21. Defendants' failure to properly pay overtime wages to Plaintiffs and the Collective Action Group members was for the purpose of unjustly enriching themselves. As a result, Plaintiffs and the Collective Action Group members have suffered significant economic damages in an amount to be proved at trial.

22. This action is brought to recover all damages available to Plaintiffs and the Collective Action Group members under the FLSA. This includes such things as unpaid wages, unpaid overtime wages, liquidated damages, interest, and attorneys' fees and costs.

23. In violation of Arizona state wage statutes, Defendants frequently made improper and bad faith deductions to the compensation of Plaintiffs. Plaintiffs were also periodically required to perform labor for the benefit of Defendants without receiving any wages or compensation. As a consequence, Plaintiffs Branson and Acevedo have state law claims for unpaid wages in amounts to be proved at trial.

24. The state law claim for unpaid wages for Plaintiff Pena falls outside the one year recovery period applicable to such claims and he is not entitled to collect on this otherwise viable claim.

## JURISDICTIONAL ALLEGATIONS

25. As this matter arises under the FLSA, a federal statute, this Court has original and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

26. This Court also has supplemental jurisdiction over any related state law wage claims for Plaintiffs pursuant to 28 U.S.C. § 1367 as such claims arise out of the same case or controversy.

27. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391 as the acts and omissions alleged herein occurred within the geographic region covered by the United States District Court for the District of Arizona.

## THE PARTIES

28. Defendant Classy Closets is an Arizona corporation that lists its corporate headquarters as 1251 S. Nelson Dr., Chandler, Arizona 85226. Classy Closets conducts extensive manufacturing and fabrication operations at this same location. This facility does not operate to sell goods or services to the general public. This facility does not conduct any retail operations and does not have a retail concept. This facility is not open to the general public.

29. On the website of the Arizona Corporation Commission (ACC), Classy Closets lists its "Business Type" as "MANUFACTURING."

30. Classy Closets is required by statute to file annual reports with the ACC. The annual reports for 2022, 2023 and 2024, which cover the relevant time period, are signed by Defendant Duane Standage in his capacity as President and CEO of the company. All three annual reports list the "CHARACTER OF BUSINESS" for Classy Closets as "MANUFACTURING."

31. Defendant Duane Standage is an owner, operator, shareholder and director of Classy Closets. Mr. Standage also serves as President, CEO and Statutory Agent for the company. As such, Mr. Standage had the authority to act directly or indirectly in the interest of Classy Closets in relation to the employment of Plaintiffs and the Collective Action Group members during the relevant time period.

32. Defendant Jill Standage is a director of Classy Closets. As such, Ms. Standage had the authority to act directly or indirectly in the interest of Classy Closets in relation to the employment of Plaintiffs and the Collective Action Group members during the relevant time period.

33. On information and belief, Ms. Standage is also an owner, operator and shareholder of Classy Closets.

34. Upon information and belief, Defendants Duane Standage and Jill Standage are husband and wife residing in Maricopa County, Arizona.

35. As alleged herein, various actions taken by Mr. Standage and Ms. Standage relevant to this matter were performed for the benefit of their marital community, rendering that marital community liable for damages suffered by Plaintiffs and the Collective Action Group members for violations of the overtime provisions of the FLSA and Arizona wage statutes.

36. Classy Closets has annual revenue well in excess of $500,000 and engages in interstate commerce as that term is defined under the FLSA.

37. Plaintiff Gary Branson is a single individual currently residing in Maricopa County who held several of the positions for Classy Closets as described in paragraph 5 of this Complaint. Mr. Branson held the position of Lead Installer 4 when he left Classy Closets in January 2025.

38. Plaintiff Steven Pena is a single individual currently residing in Maricopa County who held several of the positions for Classy Closets as described in paragraph 5 of this Complaint. Mr. Pena held the position of Installer Level 3 when he left Classy Closets in March 2024.

39. Plaintiff Paul Acevedo is a single individual currently residing in Pinal County who held several of the positions for Classy Closets as described in paragraph 5 of this Complaint. Mr. Acevedo held the position of Lead Installer 3 when he left Classy Closets in October 2024.

40. As required by the FLSA, 29 U.S.C. § 216(b), Plaintiffs have each filed a written consent form with the Court allowing them to proceed as parties in this action.

41. During the relevant time period, Defendants met all legal and statutory requirements under Arizona state law to be classified as employers of Plaintiffs.

42. During the relevant time period, Plaintiffs met all legal and statutory requirement under Arizona state law to be classified as employees of Defendants.

## BACKGROUND FACTS

43. Classy Closets employs designers who travel to customer locations and design custom closet, garage, kitchen, bath, home office and storage solutions for those customers using specialized computer software. The software then calculated the cost to the customer based on the design components, materials and assembly required.

44. The software generates a detailed list of all required piece parts, modular units, components, hardware, etc. required for the installation. Among other things, piece parts and components include such things as shelves, doors, counter tops, internal framing, and cabinet sides.

45. Detailed layout and assembly instructions are also generated to be used by Plaintiffs and Collective Action Group members to assemble and install the design at the customer's designated location.

46. Classy Closets manufactures and mills the required piece parts and modular units at its manufacturing facility in Chandler, Arizona out of wood, plywood, laminate, synthetic materials, thermo fused melamine, textured melamine, and other materials using computerized tools and power equipment that includes saws, drills, planers and edge banders. Many of these piece parts and modular units are also painted, sanded and stained by Classy Closets at its manufacturing facility.

47. Classy Closets also orders required parts and assembly hardware needed for the design from other manufacturers. This includes such things as glass, hardware, hinges, guides, handles, screws, nails, rods, glue and other materials.

48. The Classy Closets website states:

> Classy Closets is a direct manufacturer and has full control of the quality of our product from start to finish. Unlike many others in our industry, we do not source prefabricated parts from large producers thousands of miles away. By controlling our manufacturing, we have great flexibility in design and can react quickly should any adjustments be needed.[1]

49. Plaintiffs and the Collective Action Group members generally start and end each workday at the Classy Closets manufacturing facility in Chandler, Arizona. After they arrive at the facility, they pick up paperwork that details the design and installation job.

50. The paperwork also includes a detailed lists all required components, piece parts, modular units, hardware, etc. which are then located inside the manufacturing facility and loaded into trailers provided by Classy Closets and driven to the customer job site for final assembly and installation.

51. At the end of the day, Plaintiffs and Collective Action Group members returned to the warehouse, dropped off the company trailer and went home.

52. Some installation jobs included a second employee typically designated as a Helper or Apprentice. To the extent that this second employee was paid by the hour, and properly received any overtime wages due, this second employee is not part of the Collective Action Group.

53. Plaintiffs and the Collective Action Group members are required to be proficient in the use of power tools which they use at the job site for final assembly.

54. On its website, Defendants advertise that "all Classy Closets installers are employees of the company" and each "job is led by an installer that has successfully completed our training program to qualify them for the installation he/she is performing."[2]

55. On multiple occasions at various times, Defendants sent Plaintiffs out to work on an installations project without providing a full and complete set of all required parts and components, or with some other issue beyond the control of Plaintiffs. Through

---

[1] https://classyclosets.com/faq  last accessed April 30, 2025.
[2] https://classyclosets.com/faq/design-&-installation  last accessed April 30, 2025

no fault of their own, Plaintiffs were then required to return to the installation site at a later time and complete the installation project. This typically resulted in Defendants making an improper and unwarranted deduction in the commission payment made to the Plaintiff for the project.

56. Such improper deductions were not part of a good faith dispute as to the amount of wages due and constituted a violation of Arizona wage statutes.

57. On multiple occasions at various times, after an alleged problem or issue with an installation project, Defendants arbitrarily designated the issue as the fault of the Plaintiff who performed the installation. This typically resulted in Defendants subsequently ordering the Plaintiff to return to the installation job site and remedy the alleged problem without receiving any compensation for the hours spent working for the benefit of Defendants.

58. The failure to fully compensate the Plaintiff for all hours suffered or permitted to work for the benefit of Defendants constitutes a violation of the FLSA.

59. Such off-the-clock work must also be included in any calculation of overtime wage damages.

60. Defendants' knowing failure to pay Plaintiffs full and complete compensation for all hours worked constitute a violation of Arizona wage statutes.

61. Plaintiffs and the Collective Action Group members were told by Defendants when and where to start and end their workday.

62. The time and location for each installation project performed by Plaintiffs and the Collective Action Group members was set by Defendants.

63. The design for each project and all installation components and materials were set by Defendants and provided to Plaintiffs and the Collective Action Group members.

64. Plaintiffs and Collective Action Group members often worked through lunch quickly consuming food and not taking an extended meal break free from work.

65. The delivery, installation and assembly work performed by Plaintiffs and the Collective Action Group members required experience, skill, precision, care, attention to detail, the ability to follow installation directions, read blueprints, and the strength to lift heavy objects. The work did not require specialty training, certification, higher education, initiative, judgment or foresight.

66. Plaintiffs and the Collective Action Group members did not rightly qualify for any of the exemptions to the payment of overtime wages outlined in the FLSA.

67. Plaintiffs and the Collective Action Group members were not paid on a salary basis as that term is legally and statutorily defined under the FLSA.

68. The primary duty of Plaintiffs and the Collective Action Group members did not involve managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise.

69. Plaintiffs and the Collective Action Group members did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.

70. Plaintiffs and the Collective Action Group members did not have the authority to hire or fire other employees.

71. Plaintiffs and the Collective Action Group members did not make suggestions and recommendations given any particular weight as to the hiring, firing, advancement, promotion or other change of status of other employees.

72. Plaintiffs and the Collective Action Group members did not rightly qualify for the FLSA's executive exemption to the payment of overtime wages.

73. The duties of Plaintiffs and the Collective Action Group members was an indispensable part of the production and marketplace offering of Classy Closets and did not involve the performance of office or nonmanual work directly related to the management or general business operations of Defendants or any customer of Defendants.

74. The duties of Plaintiffs and the Collective Action Group members required experience and skill typically acquired through working in the construction or related trades. Those duties also required the ability to read and follow plans created by Defendants. Those duties did not involve the exercise of discretion and independent judgment with respect to matters of significance.

75. Plaintiffs and the Collective Action Group members did not rightly qualify for the FLSA's administrative exemption to the payment of overtime wages.

76. The duties of Plaintiffs and the Collective Action Group members involved delivering and installing kitchen, closet and storage solution designed and created through a collaboration of the professional designers employed by Defendants and the customer.

77. The duties of Plaintiffs and the Collective Action Group members did not involve the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

78. Plaintiffs and the Collective Action Group members did not rightly qualify for the FLSA's creative professional exemption to the payment of overtime wages.

79. The compensation of Plaintiffs and the Collective Action Group members was not such that they would rightly qualify for the FLSA's highly compensated exemption to the payment of overtime wages.

80. Given the extensive manufacturing and fabrication work conducted by Defendants, and the assembly conducted by Plaintiffs and the Collective Action Group members, Classy Closets does not properly qualify as a retail or service establishment as that term is defined in the FLSA.

81. Plaintiffs and the Collective Action Group members did not rightly qualify for the FLSA's retail or service establishment exemption to the payment of overtime wages.

**FLSA and Collective Action Allegations**

82. Plaintiffs and the Collective Action Group members operated under a common set of policies and procedures created by Defendants covering compensation

and the payment of overtime wages. These policies and procedures also applied to the delivery and installation process, time keeping records, interactions with customers, and expected job performance.

83. On the Classy Closet website, Defendants document they utilize a common set of operating principles for Plaintiffs and Collective Action Group members. For example, Defendants state:

> "We are locally owned, operated, and we rely solely on our in-house professional employees for all your design, manufacturing, and installation needs."[3]

84. Plaintiffs have firsthand personal knowledge of the hours worked, compensation practices and the terms and conditions of employment for their fellow Collective Action Group members. This knowledge was gained through, but not limited to, their many years of employment with Defendants, extensive interactions with other Collective Action Group members, extensive interactions with company supervisors and management, through verbal and written company directives, and through review of company policies and procedures.

85. Plaintiffs and the Collective Action Group members do not rightly qualify for any exemption to the payment of overtime wages contained in the FLSA.

86. Plaintiffs and the Collective Action Group members routinely worked well in excess of forty hours during most workweeks without receiving the overtime wages legally due them.

87. This collective action arises from an ongoing illegal and improper scheme by Defendants to systematically and willfully violate the provisions of the FLSA by failing to pay legally mandated overtime wages to Plaintiffs and the Collective Action Group members.

---

[3] https://classyclosets.com/faq last accessed May 1, 2025.

88.  Given the willful violations of the FLSA as alleged herein, Plaintiffs and the Collective Action Group members are entitled to use a three-year statute of limitations period for the recovery of overtime wages as provided for by the FLSA, 29 U.S.C. § 255.

89.  The actions of Defendants constitute bad faith as Defendants did not have a reasonable basis for believing that the compensation practices outlined herein did not violate the FLSA allowing for an award of liquidated damages.

90.  The bad faith and willful violations of the FLSA taken by Defendants in failing to pay overtime wages resulted in economic damages to Plaintiffs and the Collective Action Group members.

91.  As a collective action, all other current and former Collective Action Group members working at any point during the last three years may join this lawsuit by filing a properly executed consent to join form with the Court.

92.  Plaintiffs intends to seek an order from the court providing notice to all other similarly situated current and former Collective Action Group members of the pendency of this action and their right to join this lawsuit as a Collective Action Member pursuant to the provisions of 29 U.S.C. § 216(b).

93.  Given that Plaintiffs have alleged a willful violation of the FLSA on the part of Defendants, the relevant time period for such notice is three years prior to the filing of this Complaint.

**COUNT 1**
**(Violation of the FLSA, 29 U.S.C. § 201 et seq.)**

94.  All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

95.  Plaintiffs and the Collective Action Group members are covered employees legally entitled to collect all unpaid overtime wages due them under the FLSA.

96.  Defendants met all legal and statutory requirements under the FLSA to be classified as a covered employer of Plaintiffs and the Collective Action Group members.

97. Plaintiffs and the Collective Action Group members routinely worked in excess of forty hours during most workweeks without receiving the overtime wages legally due them under the FLSA.

98. As outlined herein, on multiple occasions and at various times, Defendants made improper deductions to the commissions paid to Plaintiffs and the Collective Action Group and also directed Plaintiffs and the Collective Action Group to perform off-the-clock unpaid work for the benefit of Defendants. This failure to fully pay all commissions due and require off-the-clock work is a violation of the FLSA.

99. All hours Plaintiffs and the Collective Action Group spent in off-the-clock work must be included by law in any calculation of overtime wages.

100. Defendants willfully and in bad faith failed to pay Plaintiffs and the Collective Action Group members the overtime and other wages legally due them under the FLSA.

101. As a result of this illegal policy and practice, Plaintiffs and the Collective Action Group members have suffered economic damages in an amount to be proved at trial.

102. The policy of not paying overtime wages was knowing, willful, and not taken in good faith. This entitles Plaintiffs and the Collective Action Members to extend the recovery period for damages from two years to three years as provided for by the FLSA, 29 U.S.C. § 255(a), and collect liquidated damages in an amount equal to their economic damages.

103. As provided for by the FLSA, Defendants are liable to Plaintiffs and the Collective Action Group members for their reasonable attorneys' fees and costs.

104. As a result of the illegal actions described herein, Defendants are liable to Plaintiffs and the Collective Action Members for such other relief and damages as are available to them and as provided for by law.

**COUNT II - Plaintiffs Branson and Acevedo**
**(Arizona State Law Wage Claim - A.R.S. § 23-350, et seq.**
**and Breach of Contract)**

105. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

106. Pursuant to Arizona statute, A.R.S. § 23-1501(A)(1), the employment relationship in Arizona is contractual in nature.

107. Plaintiffs provided Defendants with labor or services performing installation and assembly work for the benefit of Defendants with a reasonable expectation of receiving compensation and a good faith expectation of being paid. This nondiscretionary compensation constitutes "wages" as defined under Arizona law, A.R.S. § 23-350(7), whether those wages are determined by time, task, piece, commission or other method of calculation.

108. On multiple occasions and at various times, Defendants made improper and bad faith deductions to the commissions paid to Plaintiffs.

109. On multiple occasions and at various times, Defendants directed Plaintiffs to travel to customer job sites and repair, remediate or fix alleged issues or problems to installation projects without paying Plaintiffs wages for the time spent working. Plaintiffs were explicitly told that such repair work was to be done on their own time. Whether the issues or problems with the installation projects were, or were not, the fault of Plaintiffs, it is a violation of Arizona wage statutes not to pay Plaintiffs wages for all of the time spent working for the benefit of Defendants.

110. As a result, Defendants knowingly, unreasonably and in bad faith failed to pay Plaintiffs all wages earned on properly designated paydays in violation of Arizona law, A.R.S. § 23-351.

111. Under Arizona law, there is a one-year recovery period for all state law wage claims.

112. The employment of Plaintiff Branson and Plaintiff Acevedo ended less than one year prior to the filing of this lawsuit. As a result, under Arizona law, they are owed

and entitled to collect, and Defendants are liable for, all unpaid wages that Plaintiff Branson and Plaintiff Acevedo should have been paid during the one-year recovery period in an amount to be proved at trial.

113. The improper deductions from commission and failure to pay wages for the off-the-clock work performed at the direction of Defendants did not involve any withholding of wages due to legal authority, prior written permission, a reasonable good faith dispute as to the amount of wages due, or a recoupment or set-off asserted by Defendants against Plaintiff Branson or Plaintiff Acevedo. As a result, these improper deductions and withholding of wages constitute a violation of Arizona wage statutes, including but not limited to A.R.S. § 23-352.

114. Pursuant to Arizona Statute, A.R.S. § 23-355, Plaintiff Branson and Plaintiff Acevedo are entitled to collect treble damages for their unpaid wage claims in an amount to be determined at trial.

115. Plaintiff Branson and Plaintiff Acevedo are entitled to collect interest on all sums owed at the highest legal rate provided by law until such sums are paid in full.

116. Given that this claim arises out of an employment relationship that is contractual in nature, Plaintiff Branson and Plaintiff Acevedo are entitled to an award of attorneys' fees and costs pursuant to A.R.S. §§ 12-341 & 12-341.01.

**WHEREFORE,** Plaintiffs individually and on behalf of all those similarly situated, along with any Collective Action Group members who may join this action, respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A. Declare and certify that this action can proceed as a collective action by Plaintiffs on behalf of all similarly situated current and former members of the designated Collective Action Group working for Defendants at any time during the past three years;

B. Issue an Order that notice of this collective action shall be expeditiously sent to the designated class of Collective Action Group members informing them of the

opportunity to participate in this collective action through the filing of their written consent with the Court;

C. Declare that Plaintiffs and all Collective Action Group members employed during the relevant recovery period are legally entitled to collect unpaid overtime and other wages pursuant to the FLSA;

D. Declare that the actions of Defendants in failing to pay overtime and other wages was willful and not taken in good faith;

E. Declare that Plaintiffs and all Collective Action Group members are legally entitled to a three-year recovery period for the purpose of collecting unpaid overtime and other wages under the FLSA;

F. Enter a judgment against Defendants in an amount to be proved at trial as compensation to Plaintiffs and all Collective Action Group members for their unpaid overtime and other wages owed pursuant to the FLSA;

G. Declare that Plaintiffs and all Collective Action Group members are legally entitled to collect liquidated damages on those unpaid overtime and other wages under the FLSA;

H. Declare that Plaintiffs and all Collective Action Group members are legally entitled to an award of their reasonable attorneys' fees and costs under the FLSA;

I. Award Plaintiff Branson and Plaintiff Acevedo all unpaid wages that fall within the one-year recover period under Arizona state law;

J. Award Plaintiff Branson and Plaintiff Acevedo treble damages under A.R.S. § 23-355 for all unpaid wages owed pursuant to their state law wage claims;

K. Award Plaintiff Branson and Plaintiff Acevedo all reasonable attorneys' fees and costs incurred for their unpaid Arizona state law wage and breach of contract claims;

L. Declare that Plaintiffs and all Collective Action Group members are entitled to all other relief and remedies available to them under federal and Arizona state law due to the illegal and improper actions of Defendant;

M.  Award Plaintiffs and all Collective Action Group members interest at the highest legal rate allowable on all sums awarded in judgment from the date of judgment until paid;

N.  Award Plaintiffs and all Collective Action Group members prejudgment interest on all liquidated sums awarded at the highest legal rate allowable;

O.  That this Court retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendants file such reports as the Court deems necessary to document compliance; and

P.  For all other further relief and recovery as this Court deems just and proper.

**DATED** this 2nd day of May, 2025.

**JACKSON WHITE**

s/ Michael R. Pruitt
By: Michael R. Pruitt, No. 011792
40 North Center Street, Suite 200
Mesa, Arizona 85201
Attorneys for Plaintiffs